**Arthur R. SAWERS**

v.

**UNITED STATES.**

**C.D. 3467; Protest 65/2534–8019.**

United States Customs Court,
First Division.

June 12, 1968.

Donald C. Gancer, Chicago, Ill., for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Harold L. Grossman and Thomas Fernandes, New York City, trial attorneys), for defendant.

Before WATSON and MALETZ, Judges, and OLIVER, Senior Judge.

OLIVER, Judge:

The protest herein challenges the collector's classification of 19 hand-crafted ship models; 17 of them composed of wood, 2 of ivory, and all of them assessed with duty at the rate of 35 per centum ad valorem under item 737.15 of the Tariff Schedules of the United States. Plaintiff claims that the wood models are properly classifiable under item 207.00 of the said tariff schedules at the rate of 16⅔ per centum ad valorem, and that the ivory models are classifiable under item 792.60 of said schedules at the rate of 12 per centum ad valorem.

The tariff provisions involved are as follows:

Classified under:

Item 737.15, TSUS, 19 U.S.C., section 1202 (1964):

> Model trains, model airplanes, model boats and other model articles, all the foregoing whether or not toys * * * :
>
> * * * * * *
> Other models * * *:
> * * * * * *
> Other ...........35% ad val.

Claimed under:

Item 792.60, TSUS, supra:

> Articles not specially provided for:
> * * * * * *
> Of ivory .......... 12% ad val.

Item 207.00, TSUS, supra:

> Articles not specially provided for, of wood ..........16⅔% ad val.

The merchandise in this protest was entered on a Baggage Declaration and Entry (Customs Form 6063–B), and was originally liquidated under items 202.66 and 792.60. Subsequently the merchandise was reliquidated under item 73715 precipitating the instant litigation. A photostatic copy of the Baggage Declaration and Entry paper was received into evidence as plaintiff's exhibit 1.

The only witness to testify in this case was Mr. Arthur R. Sawers. Mr. Sawers is an investment dealer in stocks and bonds, and also operates a business, of which he is sole proprietor, under the name of Bern C. Ritchie & Co., in "nautical antique ship relicas and related items." As part of conducting this business, Mr. Sawers imports model ships from abroad. He also purchases American made model ships. Many of the imported items are replicas of antiques which in his particular field date from 1793 to 1815, the witness stated. He explained that there are two classes of antique models, "one of which I don't think we need to go into at all." One class was described as those constructed by French prisoners of war of the English from the period 1793 to 1815. These would not be exact replicas because they were constructed from memory and not from plans. Originally the ships were made from beef bones with the bases composed of straw taken from mattresses. Some of the prisoners after release constructed models of ivory or tortoise shell for wealthy Englishmen.

The value of the two ivory models as given on Customs Form 6063–B is $84 and $350, respectively, which are the prices Mr. Sawers paid. The value of the wood models ranges from $70 to $350 and also represents the prices paid. The imported model ships after importation were put into Mr. Sawers inventory for sale.

Plaintiff's exhibit 2 was identified as item 38 at page 11 of a current catalog (plaintiff's exhibit 2), which represents most of the items that Mr. Sawers stocks. Item 38 states the following "Dutch Brigantine of 1750. About 5″ long, in case."

The imported models at bar are advertised in this catalog.

The witness identified plaintiff's exhibit 3 (item 38, above), as one of the imported models which he bought in Holland. It is a model of a Dutch brig which was approximately 15 years old at the time of the instant trial. It was constructed by a craftsman from plans and research. Because of the delicate workmanship and value of exhibit 3, the trial court permitted, with reservations, that photographs (also designated exhibit 3) be substituted in lieu of the actual model. Plaintiff's exhibits 4, 5, and 6 were identified as photographs of some of the imported models.

The plaintiff argues that due to the high value and superior craftsmanship of these ship models, they are not the type of "model boats" contemplated by item 737.15. The defendant, on the other hand, takes issue with this contention, and argues that the instant models are within the *eo nomine* designation for "model boats" in item 737.15, notwithstanding that they are different in some respects from other model boats. (Citing Nootka Packing Co. et al. v. United States, 22 CCPA 464, 470, T.D. 47464.) The defendant does not dispute the fact that 17 of the models are in chief value of wood, and 2 in chief value of ivory.

Our first consideration must be to determine whether or not item 737.15 contemplates only "model boats" not of superior craftsmanship or quality or of high value. In our opinion, item 737.15 makes no distinction as to the types of model boats, but encompasses *all* model boats whether or not of superior or inferior quality and craftsmanship, or of a high or low value.

 It is a known principle of customs jurisprudence that where the statutory language is devoid of doubt or ambiguity, reference may not be made to extraneous matters to ascertain its meaning. Package Machinery Co. v. United States, 41 CCPA 63, C.A.D. 530. It is, however, permissible to examine extraneous matters " * * * solely to exemplify the validity of [the court's]

original conclusion." Universal Trancontinental Corp. v. United States, 40 CCPA 54, C.A.D. 497.

 In our opinion, item 737.15 is quite clear and unambiguous in providing for the model boats at bar in the language " * * * all the foregoing whether or not toys." No language is to be found therein differentiating between types of model boats with respect to value, quality, or craftsmanship. It is apparent from the particularity with which this merchandise is pinpointed and pro-. vided for under the tariff schedules that Congress would have made mention of any such distinguishing features had it so intended.

We are aware that before the advent of TSUS in 1963, model boats had been classified in the cases cited in briefs of counsel generally according to component material of chief value, in the absence of proof that they were models of improvements in the arts. Model boats were not provided for *eo nomine* under the Tariff Act of 1930. That, however, has been remedied insofar as the merchandise at bar is concerned. In a recent case, Laurence Myers Scaffolding Co. v. United States, 57 Cust.Ct. 333, C.D. 2809, this court had occasion to state, at page 338, in construing another item of the tariff schedules:

> One has to peruse but briefly the provisions of the Tariff Schedules of the United States to be impressed with the particularity with which merchandise is provided for in detailed itemizations. In view of this particularization, it naturally follows that the language used was selected with the view to pinpoint the classfication of merchandise rather than to encompass imported articles within the broader language which previously controlled the tariff classification of merchandise. * * *

The foregoing is in harmony with the rule expressed in Nootka Packing Co. v. United States, supra, wherein the appellate court stated:

> The clear weight of the authorities on the subject is that an *eo nomine*

statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article. * * *

There being no doubt that the articles under consideration are model boats, and finding that item 737.15 in providing for "model boats" encompasses *all* forms of model boats irrespective of value, quality, or craftsmanship, we hold that the plaintiff as a matter of law has not overcome the presumption of correctness. Judgment will issue accordingly, affirming the collector's classification and overruling plaintiff's protest.

WATSON and MALETZ, JJ., concur.