### (C.D. 4103)

### Associated Hobby Manufacturers, Inc. *v.* United States

United States Customs Court, First Division

(Decided October 23, 1970)

*Allerton deC. Tompkins* for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Herbert T. Posner* and *Steven P. Florsheim*, trial attorneys), for the defendant.

Before Watson, Maletz, and Re, Judges

Maletz, Judge: The question in this case concerns the proper rate of duty to be assessed on "HO Scale Models" that were imported in 1966 from West Germany via the port of Philadelphia. The importations consisted of a quantity of eight different miniature models of mechanized equipment used in construction work, with each model made to the scale of the actual article at the ratio of 1 to 87.

The government classified the imports under item 737.15 of the Tariff Schedules of the United States as "Other" model articles and assessed duty at 35 percent ad valorem. Plaintiff claims this assessment is erroneous and that the imports are properly classifiable under item 737.07 [1] as "Other models * * * highway vehicles * * * made to scale of the actual articles at the ratio of 1 to 85 or smaller," with duty at 16 percent. We hold that the government's classification is correct and overrule the protest.

[1] As amended by section 70 of the Technical Amendments Act of 1965, P.L. 89-241, T.D. 56511.

The pertinent tariff provisions are contained in schedule 7, part 5, subpart E of the tariff schedules and read as follows:

Model trains, model airplanes, model boats, and other model articles, all the foregoing whether or not toys; and construction kits or sets for making or assembling such model articles:

   \*  \*  \*.  \*  \*  \*  \*

| | | |
|---|---|---|
| | Other models, and construction kits or sets: | |
| 737. 07 | Rail locomotives and rail vehicles; railroad and railway rolling stock; track including switching track; rail depots, round houses, signal towers, water towers, and other trackside structures; trolley buses and trolleybus systems; cable-car systems; *highway vehicles;* ships and harbor structures; and airplanes and spacecraft; all the foregoing made to scale of the actual article at the ratio of 1 to 85 or smaller [emphasis added]_____ | 16% ad val. |

   \*  \*  \*  \*  \*  \*  \*

| | | |
|---|---|---|
| 737. 15 | Other _____ | 35% ad val. |

Against this background, plaintiff's claim for classification under item 737.07 is based on the contention that the actual articles represented by the imported models constitute "highway vehicles" within the meaning of that item. Whether or not this contention is correct is the sole issue in the case.

According to the facts presented at trial, the imported models are accurate and precise scale models of the following types of construction-type items: (1) a Caterpillar 4-wheel tractor which is used for moving equipment from one position to another for snow removal and for construction work on highways; (2) a Caterpillar loader known as a "traxcavator" which has a hydraulically operated bucket in the front for picking up dirt and other matter and is used for transporting snow, dirt and debris, etc.; (3) a Caterpillar motor grader—often called a scraper—which is used for snow removal and reshaping highway shoulders and surfaces; (4) a Universal backhoe crawler which is used with a bulldozer for digging; (5) a Caterpillar bulldozer; (6) a Hamm 3-wheel road roller; (7) a Universal crane truck; and (8) a Caterpillar tractor scraper which is used for building highways and leveling rough tract.

The main purpose of the eight categories of equipment represented by the imported models is to perform various construction operations. With respect to these categories, the Universal backhoe crawler (4),

the Caterpillar bulldozer (5), and the Hamm 3-wheel road roller (6) have limitations in speed, steering and roadability which prevent them from being moved on highways under their own motive power. Hence, these three categories must be moved by trailer or train from construction site to construction site. By contrast, the five categories of equipment represented by the other models (Nos. 1, 2, 3, 7 and 8) have been so designed with regard to size maneuverability, equipment and speed that they can travel on highways under their own power and can maintain speeds of from 30 to 35 miles per hour. They also conform with highway requirements for treads, steering, maneuverability, width, weight, lights and horns. An additional aspect is that with the exception of the Universal crane truck (7), when equipment falling within the latter five categories is operated on the highway in transit from one site to another, it must carry a contractor's license. The crane truck, however, must have a regular truck license.

Finally, the evidence shows that the vehicles represented by the models in issue are primarily used for moving dirt, the construction of roads and the building of culverts and buildings, and that their movement over the highway is to enable them to get to construction sites to perform the job or jobs for which they were designed.

Turning now to the legal aspects, it is of course basic that in the absence of a showing that the term "highway vehicles" has a commercial meaning which differs from the common meaning (which showing has not been made here), the common meaning of that term will govern. Frequently, the court in determining the common meaning of a term is aided by referring to dictionaries, encyclopedias, trade manuals, and the like. Here, however, research by the parties (and by the court independently) has failed to find a definition of the term "highway vehicles" in any lexicographic authority. Failing such definition, plaintiff argues that "those motorized vehicles are 'highway vehicles' which are actually used on highways, and which are so constructed that they comply with normal highway and safety requirements, and that they are not removed from this 'highway vehicle' category because they are used also for other purposes and in other places, irrespective of the chief use." [2] Defendant, on the other hand, contends that the essential purpose of the original equipment on which the models in question were patterned is to perform various types of construction operations and that such equipment is therefore characterized appropriately as construction equipment and not highway

---

[2] Plaintiff concedes that if the court should accept its definition of the term "highway vehicles," the models representing the Universal backhoe crawler (4), the Caterpillar bulldozer (5), and the Hamm 3-wheel road roller (6) do not fall within such definition and that the claim for classification of these models under item 737.07 should, therefore, be overruled.

vehicles. Defendant adds that the term "highway vehicles," as used in the tariff schedules, does not include construction equipment but is limited to "those vehicles which serve the primary function of transporting people and materials from one location to another."

Pertinent in resolving this dispute is the *Standard Industrial Classification Manual* (1957) which was used by the Tariff Commission as a reference in conjunction with the preparation of the tariff schedules.[3] In this source, construction equipment is *not* classified under the "Transportation Equipment" category as are most other types of vehicles. Thus, Major Group 37 (p. 112) provides for:

### *Transportation Equipment*

### *The Major Group as a Whole*

This major group includes establishments engaged in manufacturing equipment for transportation of passengers and cargo by land, air, and water. Important products produced by establishments classified in this major group include motor vehicles, aircraft, ships, boats, railroad equipment, and miscellaneous transportation equipment such as motorcycles, bicycles, and horse drawn vehicles.

In contrast, Major Group 35 (p. 100) provides as follows:

### *Machinery, Except Electrical*

### *The Major Group as a Whole*

This major group includes establishments engaged in manufacturing machinery and equipment, other than electrical equipment (Major Group 36) and transportation equipment (Major Group 37). * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

*Group No.*
353 – *Construction, Mining and Materials Handling Machinery and Equipment*

*Industry No.*
3531 – *Construction machinery and equipment*

Establishments primarily engaged in manufacturing heavy machinery and equipment used by the construction industries, such as bulldozers; concrete mixers; cranes, except industrial plant; dredging machinery; pavers, and power shovels. * * *

Likewise relevant is the 1963 Supplement to the 1957 *Standard Industrial Classification Manual* in which the original items of equipment represented by the imported models are listed under Industry No. 3531 as construction machinery and equipment. In short, the

---

[3] *Tariff Classification Study, Submitting Report* (1960), p. 8.

*Standard Industrial Classification Manual* indicates that construction equipment such as that represented by the models in issue is treated separately from those vehicles which are primarily designed to transport people and materials over a highway from one location to another. Considering the reliance that the Tariff Commission placed on the *Standard Industrial Classification Manual* in preparing the tariff schedules, it is reasonable to conclude that a similar dichotomy was intended in such schedules as between construction and transportation equipment.

It is also worthy of mention that at trial one of plaintiff's witnesses—a person who had been a construction engineer for some 25 years—when asked on direct examination about his familiarity with the originals of the models in issue, responded that "[t]hese are very common pieces of construction-type items." (R. 40.) This statement by a person familiar with the originals of the merchandise in question indicates that in the construction industry such pieces of equipment are commonly referred to as "construction-type items," or, more appropriately, as construction equipment—rather than as highway vehicles.

It is to be noted further that section 4482(a) of the Internal Revenue Code of 1954, as amended (26 U.S.C. (1964 ed.) § 4482(a)) defines the term "Highway motor vehicle" for federal excise (highway use) purposes as "any motor vehicle which is a *highway vehicle*." [Emphasis added.] It is important to add that "the language used [in the internal revenue statutes] must be given its usual and ordinary meaning, keeping in mind the subject-matter to which it relates." *Merriman v. Commissioner of Internal Revenue*, 55 F. 2d 879, 880 (1st Cir. 1931). In that circumstance, judicial determinations regarding the meaning of the terms "highway motor vehicle" and "highway vehicle," as used in section 4482(a) of the Internal Revenue Code, are obviously pertinent in determining the common meaning of the term "highway vehicles" in issue here. One such determination is found in *Rossi v. United States*, 220 F. Supp. 694 (D. Maine 1963), which involved an action to recover federal highway use taxes paid on heavy-duty trucks limited by use to general construction areas except when they were moved from one construction site to another under special construction permits. The court held that the trucks were exempt from highway use taxes because they were not "highway motor vehicles." In point are the following observations (220 F. Supp. at 695) :

> Section 4481(a) of the Internal Revenue Code of 1954 imposes a tax upon the use of any "highway motor vehicle" which has a taxable gross weight of more than 26,000 pounds. Section 4482(a) of the Code defines a highway motor vehicle as follows:

"(a) *Highway motor vehicle.*—For purposes of this sub-chapter, the term 'highway motor vehicle' means any motor vehicle which is a highway vehicle."

The issue then is whether these trucks fall within the statutory definition. The definition itself is of little assistance. However, Section 41.4482 of the Regulations, Treas. Reg. § 41.4482, provides, in pertinent part:

(a) – 1 *Definition of highway motor vehicle*
"(a) *In general.* The term highway motor vehicle means any vehicle which is propelled by means of its own motor, * * * and which is of a type used for highway transportation.
"(c) *Highway vehicle.* The term highway motor vehicle does not include any vehicle which, although propelled by means of its own motor, is of a type not used for highway transportation, that is, of a type designed and manufactured for a purpose other than highway transportation."

The Regulations thus make clear that the guide to be used in applying the statute in a particular case is the purpose for which the vehicle was designed and manufactured, and that the tax is not to be applied to a vehicle designed and manufactured for a purpose other than highway transportation.

And in summary the court concluded (id. at 696):

In final analysis, whether plaintiff is entitled to recover in this action requires a determination of what Congress intended when it enacted the legislation in question. Being satisfied that Congress did not intend to subject to tax vehicles which are primarily designed for off-highway use, this Court concludes that the trucks in question are not "highway motor vehicles" within the meaning of Section 4482(a) of the Internal Revenue Code of 1954, and that plaintiff is entitled to the refund of the taxes and penalties paid by him with respect to them for the years in question.

In accord with *Rossi* is *Carl Nelson Logging Company* v. *United States*, 281 F. Supp. 671 (D. Idaho 1967), where specially designed and equipped logging trucks were used to haul logs over private terrain and a nine-mile segment of a forest development road. The trucks involved were not the type ordinarily engaged in highway transportation but were ordered, designed, adapted and used for purposes of an off-highway nature. The government claimed a highway-use tax to be applicable. The plaintiff contended—successfully—that the trucks were not intended or designed for highway transportation and were, therefore, not highway "motor vehicles" within the meaning of the Code. In determining the issue, the court applied the following test which we deem relevant to the present dispute (281 F. Supp. at 674):

* * * It seems to this Court that an important criteria should be the purpose for which the vehicle was designed and manufactured when determining whether it is subject to the tax in

question. The tax is not to be applied to a vehicle designed for a purpose other than highway transportation. Rossi v. United States, 220 F. Supp. 694 (D. Maine, S.D., 1963).

In conclusion, we hold that the term "highway vehicles," as used in item 737.07, is limited to those vehicles which are designed primarily for highway transportation. Since the evidence before us is indisputable that the original items of equipment represented by the imported models were designed primarily for construction work rather than highway transportation, it is concluded that they are not "highway vehicles" within the meaning of item 737.07. The protest is overruled. Judgment will be entered accordingly.