59 CCPA

**ASSOCIATED HOBBY MANUFACTURERS, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5446.**

United States Court of Customs and Patent Appeals.

Jan. 13, 1972.

---

12. Tariff Classification Study, Vol. 1 at 56.

---

Allerton deC. Tompkins, New York City, attorney of record, for appellant.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Steven P. Florsheim, New York City, for the United States.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

WORLEY, Chief Judge.

The issue here is whether the Customs Court [1] erred in overruling the importer's protest to the classification of certain scale models of mechanized equipment used in construction work as "other" model articles within the meaning of item 737.15, TSUS, rather than as models of "highway vehicles" under item 737.-07.[2]

The merchandise is represented by eight models of construction equipment,

built to scale at a ratio of 1 to 87, which are used as accessories for "HO scale" model railroads.

Appellant's witness described the prototype articles and their uses as follows:

(1) a "Caterpillar" 4-wheel tractor which is used to move equipment from one position to another or (in cooperation with appropriate additional equipment) to remove snow or drill holes for telephone poles;

(2) a 4-wheeled "Caterpillar" front-end loader, known as a "Traxscavator", which has a hydraulically operated bucket for picking up dirt, snow or other debris;

(3) a 4-wheeled "Caterpillar" motor grader or scraper used to remove snow from roadways, or to reshape or remove dirt from highway surfaces and shoulders;

(4) a "Universal" backhoe crawler with cleated treads;

(5) a "Caterpillar" bulldozer, also with cleated treads;

(6) a "Hamm" 3-wheel road roller;

(7) a "Universal" 6-wheel, 6-passenger crane truck; and

(8) a 4-wheeled "Caterpillar" tractor scraper, used to scrape and pick up dirt from a road bed, and to level rough tract.

The record supports the Customs Court observations that:

The main purpose of the eight categories of equipment represented by the imported models is to perform various construction operations. With respect to these categories, the Universal backhoe crawler (4), the Caterpillar bulldozer (5), and the

---

1. 65 Cust.Ct. 357, C.D. 4103 (1970).

[2] The pertinent TSUS provisions, as amended by section 70 of the Technical Amendments Act of 1965, P.L. 89–241, T.D. 56511, are:

 Model trains, model airplanes, model boats, and other model articles, all the foregoing whether or not toys; and construction kits or sets for making or assembling such model articles:

  *  *  *  *  *  *

  Other models, and construction kits or sets:

737.07 Rail locomotives and rail vehicles; railroad and railway rolling stock; track,

including switching track; rail depots, round houses, signal towers, water towers, and other trackside structures; trolley buses and trolleybus systems, cable-car systems; *highway vehicles*; ships and harbor structures; and airplanes and spacecraft; all the foregoing made to scale of the actual article at the ratio of 1 to 85 or smaller [Emphasis supplied.] ...........16% ad val.

 *  *  *  *  *  *

737.15 Other ....................35% ad val.

Hamm 3-wheel road roller (6) have limitations in speed, steering and road-ability which prevent them from being moved on highways under their own motive power. Hence, these three categories must be moved by trailer or train from construction site to construction site. By contrast, the five categories of equipment represented by the other models (Nos. 1, 2, 3, 7 and 8) have been so designed with regard to size maneuverability, equipment and speed that they can travel on highways under their own power and can maintain speeds of from 30 to 35 miles per hour. They also conform with highway requirements for treads, steering, maneuverability, width, weight, lights and horns. An additional aspect is that with the exception of the Universal crane truck (7), when equipment falling within the latter five categories is operated on the highway in transit from one site to another, it must carry a contractor's license. The crane truck, however, must have a regular truck license.

Finally, the evidence shows that the vehicles represented by the models in issue *are primarily used for moving dirt, the construction of roads and the building of culverts and buildings, and that their movement over the highway is to enable them to get to construction sites to perform the job or jobs for which they were designed.* [Emphasis supplied.]

With the above facts in mind, we agree with the Customs Court that none of the importations are models of "highway vehicles" within the common meaning of that expression as employed in item 737.-07. Appellant acknowledges that Exhibits 4, 5 and 6—the bulldozer, backhoe and road roller—would not be encompassed even under its proposed definition of a "highway vehicle" model, inasmuch as the record shows the prototypes do not normally travel under their own power on highways at all. With respect to the remaining model vehicles, the Customs Court appropriately observed that any "highway" movement of the prototypes that does occur is only for the purpose of travelling to the site to perform the off-the-road job for which the equipment was designed or acquired. That movement on the highways, of course, is merely incidental to their main purpose—use as construction equipment—and is not the essence of their existence. Such occasional use of, or association with, the highways does not, in our opinion, necessitate classification of those vehicles as models of "highway vehicles."

We have considered appellant's arguments, but perceive no error in the conclusion reached below. The judgment is affirmed.

Affirmed.