(C.D. 4710)

LOHZIN & BORN, INC. *v.* UNITED STATES

Court No. 72–11–02370

(Dated August 3, 1977)

*Schwartz & Lidstrom* (*Thomas J. O'Donnell* of counsel) for the plaintiff.
*Barbara Allen Babcock*, Assistant Attorney General (*Velta A. Melnbrencis*, trial attorney), for the defendant.

---

[2] As noted *supra*, plaintiff does not challenge the separate appraisement of the oven.

MALETZ, Judge: This action which is before the court on cross-motions for summary judgment involves the dutiable status of merchandise invoiced as metal ship ornaments, tin plate decorative sailing ships or tin plate sailing ship ornaments that were exported from Hong Kong and entered at the port of Chicago from January 1970 through March 1971. The importations were classified as other models under item 737.15 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9, and assessed duty depending on the date of entry at the rate of 24% ad valorem (1970) or 21% ad valorem (1971). Plaintiff claims that the metal sailing ship items (hereinafter referred to as "sailing ships") should be classified as articles of tin plate under item 657.15, TSUS, as modified by T.D. 68–9, and assessed duty at the rate of 8% ad valorem (1970) or 7% ad valorem (1971).

The parties have agreed that the sailing ships are wholly or in chief value of tin plate and that the imported merchandise is not chiefly used for the amusement of children or adults and is not a toy.

The pertinent provisions of TSUS are as follows:

Classified under:

Schedule 7, Part 5, Subpart E:

Model trains, model airplanes, model boats and other model articles, all the foregoing whether or not toys; and construction kits or sets for making or assembling such model articles:

| | |
|---|---|
| 737.05 | Models of inventions and of other improvements in the arts, to be used exclusively as models_____ * * * |

Other models, and construction kits or sets:

| | |
|---|---|
| 737. 07 | Rail locomotives and rail vehicles; railroad, and railway rolling stock; track, including switching track; rail depots, round houses, signal towers, water towers, and other trackside structures; trolley buses and trolley-bus systems; cable-car systems; highway vehicles; ships and harbor |

|        |                                                                                                                                      |                                  |
|--------|--------------------------------------------------------------------------------------------------------------------------------------|----------------------------------|
|        | structures; and airplanes and spacecraft; all the foregoing made to scale of the actual article at the ratio of 1 to 85 or smaller_____ | * * *                            |
| 737. 09 | Construction kits or sets with construction units prefabricated to precise scale of the actual article_____                 | * * *                            |
| 737.15 | Other_____                                                                                                         | 24% ad val. [1970] 21% ad val. [1971] |

Claimed under:

Schedule 6, Part 3, Subpart G:

Subpart G headnotes:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Articles of iron or steel, not coated or plated with precious metal:
    Cast-iron articles, not alloyed:

\*.　　\*　　\*　　\*　　\*　　\*　　\*

    Other articles:

|        |                          |                                         |
|--------|--------------------------|-----------------------------------------|
| 657.15 | Of tin plate_____ | 8% ad val. [1970] 7% ad val. [1971]     |

Plaintiff claims the government's classification is erroneous on the basis (1) that the importations are not within the common meaning of the term model; and (2) that the legislative history of item 737.15 indicates that only toy models or models which have the potential for amusement of the kind present in toys were intended to be classifiable thereunder.

Thus the issue in brief is whether the importations were correctly classified by the government as other models or whether they are properly classifiable as articles of tin plate.

A representative sample of the imported merchandise, consisting of a stylized metal characterization of a sailing ship, was submitted with plaintiff's motion for summary judgment. This sample is made of thin sheets of tin plate which were cut and formed to represent a sailing vessel approximately 15″ high and 16″ in length. The ship is elaborately decorated with embossed designs in the forms of windows and other decorations on the hull; the sails have a stippled or grained surface and are decorated with embossed shields and Maltese crosses; the rigging, masts and ladders are constructed of wire; and tin plate banners are atop each of the three masts. The entire sailing ship is painted a silver color which is heavily antiqued in black so that the silver shows through in a highly decorative manner. Although it appears from an examination of the sample that it is not an exact replica of a particular ship, it is nevertheless obvious that the ship represented is of the Armada-type such as the vessels used by Columbus in his voyage across the Atlantic.[1]

## I

Against this background, plaintiff maintains that the importations are not models under the common meaning of the term. According to plaintiff, "a 'model' is something which represents, *with an appreciable degree of accuracy*, that which is already in existence; or that which, because of its qualities, may or should serve as something to be emulated" (plaintiff's reply br. p. 3, emphasis in original).

We, therefore, must consider whether the imports are models under the common meaning of that word.

It is well established that the common meaning of a tariff term is not a question of fact, but a question of law to be decided by the court. E.g., *United States* v. *National Carloading Corp.*, 48 CCPA 70, 72, C.A.D. 767 (1961). In customs jurisprudence, words are to be interpreted in their commonly received and popular sense in the absence of a contrary legislative intent or proof of a commercial designation that differs from the ordinary understanding of the term. And in determining the common meaning of a term, the court may rely on its own understanding and as an aid may consult dictionaries, lexicons, scientific authorities, and other reliable sources. See, e.g., Sturm, *A Manual of Customs Law* (1974), pp. 202 et seq.

---

[1] In support of its cross-motion for summary judgment, the defendant has submitted an affidavit of an assistant district director of the Customs Service for the port of Buffalo. Accompanying this affidavit is an illustrative exhibit of a sailing vessel which on a smaller scale (approximately 6″ high and 6″ long) is substantially similar to the present importation except for the words "SANTA MARIA" which are embossed on the stand of the smaller article. The smaller item was purchased from the J. C. Penney Co. where it was packaged in a box labeled "COLUMBUS ARMADA—Decorative Replicas of the Nina, Pinta and Santa Maria," and had a $1.00 price tag affixed to it.

In an effort to aid the court in its determination of the common meaning of the term "model," plaintiff cites the following definition from *Webster's New International Dictionary* (2d ed. 1961):

> *model.* 1. A set of plans for a building to be erected, or of drawings to scale for a structure already built; sometimes, a ground plan, as of a garden. Obs. 2. That which exactly resembles something; a copy.
>
> \* \* \* \* \* \* \*
>
> 3. A miniature representation of a thing; sometimes, a facsimile of the same size.
> 4. Style of structure; pattern; design; as, perfect in *model.*
>
> \* \* \* \* \* \* \*
>
> 7. Something intended to serve, or that may serve, as a pattern of something to be made; as, the clay *model.*
>
> \* \* \* \* \* \* \*

A similar definition is found in the *Funk & Wagnalls Standard Dictionary of the English Language, International Edition, Combined With Britannica World Language Dictionary*, (1963):

> model n. 1 An object, usually in miniature, representing accurately something to be made or already existing; more rarely, a plan or drawing: a *model* of a building.
>
> \* \* \* \* \* \* \*
>
> 5. That which strikingly resembles something else; an approximate copy or image.
>
> \* \* \* \* \* \* \*
>
> *Synonyms (noun):* archetype, copy, design ectype, example, facsimile, image, imitation, mold, original, pattern, prototype, replica, representation, type. A *pattern* must be closely followed in its minutest particulars by a faithful copyist; *a model may allow a great degree of freedom.* [Emphasis added in part.]

Referring to these definitions, the following aspects of the term "model" appear relevant to that term as it is used in the tariff schedules: "[a] miniature representation of a thing;" or "[t]hat which strikingly resembles something else; an approximate copy or image." Further, while "[a] pattern must be closely followed in its minutest particulars by a faithful copyist; a *model* may allow a great degree of freedom." In this context, plaintiff concedes that a model need not "perfectly depict the original in all respects"; however, it contends that "a point is reached where a representation of an object, because of its failure to adequately depict the characteristics of that object, cannot be termed a 'model' of the original object" (plaintiff's reply br. p. 3).

In this connection, plaintiff cites two Bureau of Customs rulings, reported in abstract form, which, plaintiff says, limit the tariff definition of "model" to that which accurately represents an existing article or that which serves as something to be emulated. Thus, in T.D. 66–38(14),[2] the Bureau ruled that:

> Miniature structures of garages, service stations, bungalows, ranch houses, etc., although recognizable as such, do not accurately represent existing structures, and are, therefore, classifiable under the provision for Toys * * * not specially provided for: * * * Other, in *item 737.90*, TSUS, and not under the provision for Other model articles * * * whether or not toys * * *: * * * Other models * * *: * * * Other, in *item 737.15*, TSUS. [Emphasis in original.]

The other Bureau of Customs ruling, relied on by plaintiff, reads as follows (T.D. 56448(13)):[3]

> A ship with a wood hull measuring 4″ x 1¼″ x ¾″ resembling a rowboat with a slightly elevated prow having a curved 1½″ x 2½″ piece of wood representing a sail painted with several Chinese characters and also having six stacked barrels amidship and seven kokeshi dolls seated at the side opposite the sail; classifiable under the provision for Articles not specially provided for, of wood in *item 207.00*, TSUS and not under the provision for Other models * * *: * * * Other in *item 737.15 as this ship does not represent a prototype which has existence in fact or in legend.* [Emphasis added in part.][4]

Not cited by plaintiff but also relevant to the problem is a third abstracted ruling of the Bureau of Customs, T.D. 56467(84).[5] In that ruling, the Bureau classified steam engines and turbines, and crystal lattice models, which were designed to show the spatial relations of atoms in a crystalline structure, as other models under item 737.15. In reaching this conclusion, the Bureau used the following rationale:

> *The provisions for models in Schedule 7, Part 5, Subpart E, are not limited to articles* used for model railroading, or for decorative purposes, or to articles *which exactly resemble the articles of which they are models, but includes articles which are recognizable representations of articles.* [Emphasis added.]

---

[2] 101 Treas. Dec. 127 (1966).

[3] 100 Treas. Dec. 321 (1965).

[4] It is to be emphasized that in T.D. 56448(13) Customs found that the ship did not represent a prototype which had existence in fact or legend. Thus, Customs guidelines—at least to the extent of this ruling—were to the effect that a model need not represent an actual prototype and that a merely legendary prototype would suffice.

*Webster's New International Dictionary* (2d ed. 1961) defines the term "prototype" as "An original or model after which anything is copied; a primary form; pattern; exemplar; archetype; as the prototype of a species or of the novel."

[5] 100 Treas. Dec. 414 (1965).

From the foregoing abstracts, it appears that the Bureau of Customs definition of the term "model" would cover articles which (1) *accurately* represent a prototype which exists in fact or legend; and (2) articles which are *recognizable representations of articles.* These guidelines, it is to be added, are similar to those listed by the Tariff Commission in the *Summaries of Trade and Tariff Information,* Schedule 7, Volume 4 (1968) p. 172, where the following is stated with respect to the model provisions:

> The models classifiable under item 737.07 are limited to certain designated articles made to scale of the actual article at a ratio of 1 to 85 or smaller; item 737.09 provides for construction kits or sets with construction units prefabricated to precise scale; and item 737.15 covers both models and construction kits or sets not provided for by the two immediately preceding item numbers, including less exact representations of the original articles, but does not go so far as to cover merely the "crude form of a class of articles."

Moreover, there is no indication whatever that Congress intended the meaning of the term "models" as used in item 737.15 to be restricted to only those items which are either exact or accurate representations of existing articles. In fact, such an interpretation of the term "model" would extremely limit the scope of the model provisions. Under such an interpretation, none of the models which were held classifiable under item 737.15 as other models in *Hudson Shipping Co., Inc.* v. *United States,* 75 Cust. Ct. 26, C.D. 4606 (1975), would have qualified as models despite their fine detailing.[6] Nor would the extremely expensive boat models in *Arthur R. Sawers* v. *United States,* 60 Cust. Ct. 593, C.D. 3467, 285 F. Supp. 852 (1968), have qualified for classification under item 737.15 since some of the models were not exact or accurate replicas because they were constructed from memory and not from plans.

What is more, if Congress had intended the term "model" to include only exact models or accurate replicas of existing models, it would have had no need to specify in the article description for item 737.07 that the models covered thereunder must be made to scale of the *actual article* because it would have been so understood from the use of the term "model." Similarly, Congress would have had no need to specify in item 737.09 that the construction kits or sets for the making or assembling of models must have construction units prefabricated to the precise scale of the *actual article.* The obvious answer is that

---

[6] For example, in *Hudson Shipping* one of the models purportedly represented the clipper ship Great Republic which had been built in 1835 but was subsequently destroyed. Since only illustrations and paintings remained, the subject model could not have been an accurate or exact representation of an existing article.

Congress did not use superfluous words but wanted to make a distinction between items 737.07 and 737.09 on the one hand, and item 737.15 on the other hand. Items 737.07 and 737.09 were clearly intended to cover scale models built to scale of existing articles and kits or sets with construction units prefabricated to the precise scale of existing articles, whereas item 737.15 was intended to cover models and kits which were not quite so accurate or exact or may not even have had an existing prototype.

In short, to come within the common meaning of the term "model," an article need not be an exact or accurate representation of something in existence; it is sufficient if it is more than a crude form of a class of articles and recognizably represents an article that existed in fact or legend. There is no doubt that the importations in this case meet these requirements; for an examination of the representative sample leaves no doubt that it is a recognizable representation of a ship of the Armada-type.[7]

## II

Plaintiff next argues that item 737.15 does not cover nontoy models but pertains only to those models which are toys or have the potential for amusement, of the kind present in toys. In support of this contention, plaintiff claims that the legislative history of the model provisions demonstrates a clear intention to classify models which are not toys under items 737.05, 737.07 and 737.09, while item 737.15 covers only toy models.

Defendant, on the other hand, maintains that plaintiff's argument (1) is not supported by the legislative history; (2) ignores the statutory words "whether or not toys" in the applicable TSUS superior heading; and (3) would, in effect, restore the necessity for distinguishing between "toy" and "nontoy" models. For the reasons that follow, we agree with defendant.

It is undisputed that item 737.15 is an *eo nomine* provision. *Arthur R. Sawers* v. *United States, supra*, 60 Cust. Ct. 593, 285 F. Supp. 852. It is also basic that an *eo nomine* provision includes all forms of the named article unless a contrary legislative intent, judicial decision or administrative practice is shown. *C. J. Tower & Sons* v. *United States*, 30 Cust. Ct. 235, C.D. 1526 (1953). In view of this, the imported ship models would be classifiable under item 737.15 unless plaintiff can show by legislative intent, judicial decision or administrative practice that a contrary result was intended.

---

[7] That the common meaning of the term "model" is not limited to exact or accurate replicas of existing objects is demonstrated by the illustrative exhibit captioned the "SANTA MARIA" (see note 1, *supra*) which bears a striking resemblance in style to plaintiff's importation, in the present case, as typified by the representative sample. Since the "Santa Maria" is sold and bought as a "replica," i.e., a model, it would seem that plaintiff's merchandise should similarly be considered a replica or model.

Reviewing first the legislative background of the model provisions, it is to be observed that prior to the enactment of the Tariff Schedules of the United States, the only specific provision for models was contained in paragraph 1720 of the Tariff Act of 1930 which provided for models of inventions and other improvements in the arts to be used exclusively as models. Under the 1930 Act, other "models" were classified as toys, if they were chiefly used for the amusement of children,[8] or were classified under various basket provisions (e.g., under paragraph 353 as electrical articles or paragraph 397 as articles of metal) if they were chiefly used by adults. In adopting the tariff schedule provisions covering models, it was the stated intent of the Tariff Commission "to eliminate the existing difficult requirement of distinguishing between the 'toys' and the 'nontoys'." *Tariff Classification Study* (hereinafter referred to as "*Study*"), Schedule 7, p. 291 (1960).

However, the initial draft provisions failed to accomplish this purpose since the definition of a "toy" in the proposed tariff schedules was extended to include adults as well as children. The result was that certain model items, previously classified under various basket provisions, were now subjected to substantially higher rates because they qualified as adult toys. These inequities were pointed out to the Tariff Commission at the hearings held in December of 1958 and in follow-up letters suggesting changes. See *Study*, Schedule 7, pp. 666–75, 777–79 (1960). As a result, the following changes were made: (1) the superior article heading applicable to all model provisions was revised to make it clear that model trains, model airplanes, model boats, and other model articles included toys as well as nontoys;[9] (2) a new item 737.07 was carved out of item 737.15 to preserve the substance of the existing customs practice with regard to certain models used by adults;[10] and (3) item 737.10 was renumbered.

[8] Paragraph 1513 of the Tariff Act of 1930 defined toys as articles chiefly used for the amusement of children. Under the Tariff Schedules of the United States toys are defined as "any article chiefly used for the amusement of children or adults" (Schedule 7, Part 5, Subpart E, headnote 2).

[9] The superior heading preceding the model provisions of Schedule 7, Part 5, Subpart E, was amended by adding the term "whether or not toys," as follows:

> Model trains, model airplanes, model boats and other model articles, all the foregoing whether or not toys: and construction kits or sets for making or assembling such model articles: [Emphasis added.]

[10] The following explanation in the *Study, First Supplemental Report*, p. 81 (1962), illustrates the reason for the change:

> An effort was made to resolve the model train issue in the original draft schedule on which public hearings were held in December 1958. As a result of testimony and statements received from an interested importer in connection with that hearing, the provisions of item 737.07 were incorporated in the proposed schedule to preserve the substance of the practice with respect to locomotives and railroad rolling stock of types used by adult hobbyists. Other types of imports were brought to the attention of the Commission in connection with the public hearing on this first supplemental report in proposed form. The foregoing change in item 737.07 takes into account the latest existing customs practices in regard to this matter. See CAD 746.

Plaintiff, however, has misconstrued this change in making the following contention (plaintiff's br. p. 10):

> Thus, it is clear that in the *first* proposed provisions covering models, the Commission contemplated classifying *all* model trains, boats, and airplanes as toys in item 737.15. As shown previously, however, when it was pointed out to the Commission that certain nontoy articles would fall within item 737.15 as proposed, the Commission readily changed the proposed provisions so as to exclude these nontoys from item 737.15. [Emphasis in original.]

Plaintiff points to no specific legislative history to support its novel theory that the so-called basket provision for models pertains only to toy models. Quite the contrary, as stated before, the legislative history makes it clear that the Tariff Commission adopted the model provisions in order to eliminate the then existing difficult task of distinguishing between toys and nontoys. (Yet under plaintiff's theory, classification under item 737.15 would invariably require a determination of whether a particular model was or was not a toy.) And the Tariff Commission concluded that the only way to eliminate the problem of distinguishing between toy models and nontoy models was to classify them both under the same provision, item 737.15. This, of course, would result in a higher rate of duty for some items (i.e., the nontoy items not classifiable under items 737.05 through 737.09); however, it would seem that the Tariff Commission was aware of the higher rates for some items when it pointed out that the *"great bulk"* of the articles covered by item 737.15 was previously dutiable under paragraph 1513 of the Tariff Act of 1930 at the rate of 35%. See *Study*, Schedule 7, p. 293. In fact, it is for the very reason that the proposed basket provision for models resulted in an increased duty on some model articles that Congress carved item 737.07 out of item 737.15 and thus reduced the rate on some additional model items which otherwise would fall under the basket provision. See *Study, First Supplemental Report*, p. 81 (1962).

Nevertheless, plaintiff disagrees and, in order to prove its contention that nontoy items were not intended to be classified under item 737.15, cites the *Study, Interim Report*, March 15, 1955,[11] which indicates that unless it cannot be helped, the proposed revised schedules shall not include changes in rates. Plaintiff reasons that to classify certain nontoy items under that provision at the rate of 35% duty would increase the duty on articles such as the importations [12] by a

---

[11] This report is reproduced at *Study, Submitting Report*, Appendix A, p. 31 at pp. 54–56.

[12] Plaintiff maintains (br. p. 14) that under the 1930 Act the importations would have been classifiable as ornamental articles of metal.

rate of 23% and thereby thwart the previously stated congressional intent. However, it is well recognized that the tariff schedules superseded the old schedules and did not merely constitute a restatement of the Tariff Act of 1930 with discrepancies settled by adhering to the old act rates. *F. L. Smidth & Company* v. *United States*, 56 CCPA 77, C.A.D. 958, 409 F. 2d 1369 (1969); *Pacific Suppliers, Ltd.* v. *United States*, 62 Cust. Ct. 517, 522, C.D. 3819, 299 F. Supp. 1134 (1969). Furthermore, with regard to the model provisions, the Commission never indicated that all of the articles covered under the proposed item 737.15 had been previously covered at the 35% ad valorem rate as toys. To the contrary, the Commission explained that some articles had not been covered under paragraph 1513 and that *the existing rate was maintained only to the extent possible*. See *Study*, Schedule 7, p. 291. Thus, rather than relying on rates to determine whether the importations are of the type of articles intended to be encompassed under item 737.15, it is clear that the legislative intent was to include both toy and nontoy models in that provision regardless of rates.

Turning next to prior judicial decisions, we find that case law supports the classification of nontoy models under item 737.15. Thus in *Arthur R. Sawers* v. *United States, supra*, 60 Cust. Ct. 593, 285 F. Supp. 852, hand-crafted wooden and ivory ships which were used for display and were obviously not toy models were held properly classifiable under item 737.15. And in *Hudson Shipping Co., Inc.* v. *United States, supra*, 75 Cust. Ct. 26, the importations were impressive looking ship models and construction kits which purported to be scale models. These models which were display items mounted on pedestals and obviously not toys were nonetheless held classifiable under item 737.15 as other models. In the *Hudson* case the court reviewed the entire legislative history surrounding the model provisions and then stated that "* * * all merchandise enumerated in the superior heading applicable to items 737.05 through 737.15 and not specifically provided for under items 737.05, 737.07, and 737.09, is provided for under item 737.15." *Id*. at 48.

Plaintiff's contention that only toy models come within the purview of item 737.15 is further demonstrated to be incorrect by the holding in *Associated Hobby Manufacturers, Inc.* v. *United States*, 65 Cust. Ct. 357, C.D. 4103 (1970), *aff'd*, 59 CCPA 54, C.A.D. 1037, 452 F. 2d 1405 (1972). In that case, scale models of mechanized equipment used in construction work were classified under item 737.15 even though the models were built to scale at the rate of 1 to 87 and were used as accessories for HO scale model railroads. The only reason these scale models were not classifiable as models of highway vehicles as specified under item 737.07 was because their prototypes were not within the common meaning of the term "highway vehicles." There is no doubt that the HO models in the *Associated Hobby* case, were not toys; nevertheless, they were classified under item 737.15—and this because they did not meet the requisites of item 737.07.

For the foregoing reasons, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the action is dismissed.