**MATTEL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Slip Op. 96–194.
Court No. 92–08–00546.

United States Court of
International Trade.

Dec. 13, 1996.

Stein, Shostak, Shostak & O'Hara (Marjorie M. Shostak and Lawrence Shostak, of counsel), San Diego, CA, for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Laura Siegel, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel), Washington, DC, for defendant.

### DECISION AND JUDGMENT

WATSON, Senior Judge:

This test case involves the proper tariff classification of two doll-sized cars imported by the plaintiff Mattel, Inc. for sale as accessories with their line of Barbie dolls. The cars look like the 1957 Chevrolet Bel–Air convertible and the Ferrari GTS 328. They are large enough to hold the Barbie dolls as drivers or passengers. The Chevrolet is about two feet long. The Ferrari is about 20 inches long.

The cars were classified by the Customs Service as toys other than models without spring mechanisms, under Subheading 9503.90.60 of the Harmonized Tariff Schedules of the United States ("HTSUS"). As such they were ineligible for special duty-free treatment under the Generalized System of Preferences ("GSP"), and were assessed with duty at the rate of 6.8% *ad valorem*. Mattel claims that the cars should be classified under Subheading 9503.90.70 of the HTSUS as other models, a provision that was eligible for duty-free status under the GSP.

The statutory provisions involved in this case are as follows:

Classified Under:

9503   Other toys: reduced-size ("scale") models and
       similar recreational models, working or not; . . .;
       parts and accessories thereof;

9503.80      Other toys and models, incorporating a motor, . . .

       \*   \*   \*   \*   \*   \*

9503.90      Other:

       \*   \*   \*   \*   \*   \*

       Other:

       \*   \*   \*   \*   \*   \*

|  |  | Rates of Duty | |
|---|---|---|---|
|  |  | General | Special |
| 9503.90.60 | Other toys (except models), not Having a spring mechanism | 6.8% | Free (A*, . . .) |

Claimed Under:

| 9503.90.70 | Other: . . . . . . . . . . . . . . . . . . . . . | 6.8% | Free (A, . . .) |
|---|---|---|---|
|  | Model airplanes, model boats And other models: | | |
|  | 107 Made to a scale of the Actual article at a ratio of 1 to 85 or smaller . . . . | | |
|  | 205 Other . . . . . . . . . . . . . . . . . . | | |

Prior to July of 1989 it made no difference whether Mattel imported these cars under SUBH.9503.90.60 as toys, or SUBH 9503.90.70 as models, because both provisions were duty-free under the GSP. The fact that it chose to assert its right to classifica-

tion as models only after it became aware that products from Mexico were going to lose their GSP duty-free status under the provision for other toys in SUBH 9503.90.60 does not detract from plaintiff's present claim. The question before the court is simply whether or not these cars are models within the meaning of the claimed tariff provision.

In support of its classification the government relies on a number of arguments. First, as always, it raises its presumption of correctness. Then it argues that these cars were not designed to be models, lack the various qualities of models, were not sold as models, were not commercially known as models, were not used as models and are not within the meaning of the word "models" as used in the tariff schedules.

The government makes these contentions with much wit and with extensive argumentation. But it all comes down to a position that models must be highly detailed, must not be used as toys, and can, at most, be either the sort of reproductions of real vehicles that actually fly, sail, or run on the ground, or the sort of exact miniatures that are kept in display cases.

The gist of the testimony by defendants' expert witnesses was that models must be highly accurate representations of the original, possessing near perfection in proportion and detail. In addition, according to defendant's witnesses, models are not to be used as objects of play or for amusement.

By these standards, the cars in question would obviously not be models because they are used as an adjunct to playing with Barbie dolls and they are not perfectly accurate reproductions of the original cars. Although there was some evidence that these cars have become the object of acquisition by those who collect model cars, the preponderance of the evidence was that they are used for play purposes by children.

Although defendant's witnesses were impressive, it is clear that their testimony cannot take the place of the legal precedents of this court. The testimony and evidence adduced by plaintiff was more persuasive on the whole, and more in conformity with legal precedent.

The leading opinion of this court on the subject of models is the scholarly decision by Judge Maletz in *Lohzin & Born, Inc. v. United States,* 79 Cust.Ct. 34 (1977). In that case, the Customs Service had classified certain metal sailing ships as other models under Item 737.15 of the Tariff Schedules of the United States (TSUS) as modified by TD 68–9. That classification came under a subheading which provided inter alia for "model boats and other model articles, all the foregoing whether or not toys...." In that case it was the plaintiff who was resisting classification as models and was urging classification as articles of tin-plate under Item 657.15 TSUS, as modified by TD 68–9. It argued that the importations were not within the common meaning of the term "model" and that the legislative history of Item 737.15 indicated that *only* toy models or models that had the potential for amusement of the type found in toys were intended to be classifiable thereunder.

The court found that the ship in question was of the Armada-type, such as those used by Columbus in his voyage across the Atlantic. The court noted that the sample was not an exact replica of a particular ship. This lack of exactness in the replication of the original form required the court to deal with plaintiff's argument that models must be exact or accurate representations of existing articles. The court found many reasons to hold that such an interpretation of the term "model" would "extremely limit the scope of the model provisions." The court specifically held that "to come within the common meaning of the term 'model', an article need not be an exact or accurate representation of something in existence; it is sufficient if it is more than a crude form of a class of articles and recognizably represents an article that existed in fact or legend." *Lohzin & Born, Inc. v. United States,* at 41. The court further pointed out that the provision in Item 737.15 for models was an *eo nomine* provision, meaning that it would include all forms of the named article unless a contrary legislative intent, judicial decision or administrative practice is shown. Citing, *C.J. Tower & Sons v. United States,* 30 Cust.Ct. 235, C.D. 1526 (1953). In addition, the court pointed

out that, in adopting the tariff schedule provisions covering models, it was the legislative intention to eliminate the distinction between models that were toys and models that were not toys.

In the present case the court has before it recognizable replicas of real cars, specifically designed and manufactured to resemble those cars, done with the permission of the auto manufacturers. These are far beyond what could be considered crude in their appearance or manufacture.

The question for this court therefore is whether or not any alteration has taken place in the tariff law that would undo the principle that models need not be exact and can be either used for toy purposes or for non-toy purposes.

The government argues that under the HTSUS there is a line of demarcation between things which are toys and things which are models. But careful examination of the HTSUS provisions surrounding the claimed provision shows without doubt that exactitude has not been exalted and that models can be toys.

To begin with, the Customs *Harmonized System Handbook,* at page 26, discusses the concept of "scale" as follows:

*In the HS, the term "scale" (as used in heading 9503) is not to be interpreted in the restrictive sense.* It appears, in the HS text, *in quotation marks* to indicate that it is meant to reflect the common sense of the term as used in the model trade. *That is, a "scale" model does not necessarily have all parts or features built to exact scale.* (Emphasis added)

This is a clear acknowledgment that scale does not necessarily mean perfect exactness of proportion, even when dealing with those models that are of the type solely acquired for their appearance.

In examining the structure of the provisions governing toys starting with Subheading 9503, it becomes plain that it is possible for any of the articles covered under the various subheadings to be toys as well as models.

It is true, as defendant points out, that the phrase "whether or not toys" from TSUS Item 737.15 as been omitted from the superior heading in HTSUS 9503. But this is hardly evidence of an intention by the legislature to foreclose the possibility that models could indeed be used as toys. First and foremost, they are still subsumed within the category of "other toys." This alone is enough to negate defendant's argument. They are also described as "working or not." This must mean that they are either intended for pure display or manipulation and simulation of use. And if the model is intended for manipulation or simulation of use, that can hardly be distinguished from play or amusement. So it is pointless to draw a strict distinction between models and the common understanding of toys. Furthermore, general consideration of the items included in the breakdown of superior heading HTSUS 9503 clearly indicates that models are considered to be a potential form of toys.

■ The last of these model provisions is for "other models" under Subheading 9503.90.70.205. That obviously has to refer to models other than "model airplanes, model boats, or other models, made to a scale of the actual article at a ratio of one to eighty-five or smaller." It logically includes all articles which fall within the common meaning of the term "model" that are not included in the previous subheadings. These need not be exact or accurate replicas, if they are recognizable representations of an existing original. They are models, whether or not they are used for play, alone or in conjunction with another toy. It is this last category under which these imported cars are properly classifiable.

For the reasons given above, judgment will be entered granting plaintiff's claim for classification.